# **SETTLEMENT AGREEMENT**

This stipulated Settlement Agreement ("Agreement") is entered into by and between Plaintiffs Cascadia Wildlands, Oregon Wild, and Klamath Siskiyou Wildlands Center ("Plaintiffs") and Defendant, the United States Bureau of Land Management ("BLM"), who, by and through their undersigned counsel state as follows:

WHEREAS, on August 16, 2021, BLM issued the final Archie Creek Fire Salvage Harvest and Hazard Tree Removal Environmental Assessment ("EA") and a signed Finding of No Significant Impact ("FONSI");

WHEREAS, the EA analyzed (1) salvage harvest of dead, damaged, or dying trees ("salvage harvest") and (2) removal of imminent and likely to fail hazard trees that have high risk potential for structural failure and are a risk to human safety and/or infrastructure along roads, in campgrounds and recreation sites, adjacent to private infrastructure and homesites, and adjacent to pump chances, and their access roads ("hazard tree removal");

WHEREAS, BLM issued various salvage harvest and/or hazard tree removal decision records and sale contracts within the project area based on the EA;

WHEREAS, Plaintiffs filed this action, *Cascadia Wildlands, et al. v. United States Bureau of Land Management*, No. 6:22-cv-204-AA, on February 9, 2022 in the U.S. District Court for the District of Oregon, alleging that BLM's EA, FONSI, and resulting decision records violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.* (the "Action");

WHEREAS, Defendant denies any violation of law;

WHEREAS, Defendant anticipates authorizing a small number of additional hazard tree removal decision records under the EA, each authorizing removal of a small amount of acreage relative to those issued to date;

WHEREAS, the Parties engaged in negotiations to determine if they could amicably resolve this Action;

WHEREAS, the Parties believe it is in the best interest of the public, the Parties, and judicial economy to resolve this Action without further litigation and have reached a settlement as embodied in this Agreement.

NOW, THEREFORE, the Parties stipulate and agree to the following:

1. BLM agrees that it will not rely on the challenged EA and FONSI for any future commercial salvage harvest decision records in the project area that have not already been issued as of the effective date of this Agreement.

2. The Parties agree that nothing in this Agreement shall be construed to prohibit BLM from relying on the challenged EA and FONSI for hazard tree removal decision records, or from conducting corresponding hazard tree removal actions.

3. The Parties agree that nothing in this Agreement shall be construed to prohibit third party purchasers of sales from continuing to harvest trees pursuant to salvage harvest decision records issued prior to the effective date of this Agreement, or hazard tree removal decision records issued prior to or after the effective date of this Agreement.

4. In the event there is a dispute over a future decision record and Defendants' compliance with Paragraph 1 of this Settlement Agreement, Plaintiffs will notify Defendants in writing of the nature of the dispute and, within 7 days after such

notification, the Parties will initiate discussions and attempt to resolve the dispute. If the Parties do not resolve the dispute within 30 days thereafter, Plaintiffs' option is to file a new case challenging the future decision record. Through this Agreement, the BLM does not waive any jurisdictional, procedural, or substantive defenses to any new cases. The Parties agree not to seek to invoke the contempt powers of this Court in aid of enforcement of this Agreement.

5. No term of this Agreement turns BLM's actions pursuant to this Agreement into administratively or judicially reviewable final agency action if they would not otherwise qualify for review under applicable agency rules or as final agency action within the meaning of the APA.

6. In exchange for the consideration set forth herein, Plaintiffs release Defendant, all other federal agencies, the United States, and all of their employees and officials from, and Plaintiffs covenant not to sue on, all claims, causes of action, obligations, or liabilities that they alleged or could have alleged in the above-captioned case based on facts that existed as of the effective date of the Agreement.  The Parties do not waive any claims or defenses that they may have in any subsequent litigation or administrative proceedings initiated after the effective date of the Agreement, except as expressly stated herein.

7. No part of this Agreement shall have precedential value in any litigation or in representations before the Interior Board of Land Appeals, or any court, forum, or in any public setting.  This Agreement is executed for the purpose of settling Plaintiffs'

Complaint, and nothing herein shall be construed as precedent having preclusive effect in any other context.

8. Nothing in this Agreement shall be construed or offered as evidence in any proceeding as an admission or concession of any wrongdoing, liability, or any issue of fact or law concerning the claims settled under this Agreement or any similar claims brought in the future by any other party. Except as expressly provided in this Agreement, none of the Parties waives or relinquishes any legal rights, claims, or defenses it may have.

9. The Parties agree that this Agreement was negotiated in good faith and that it constitutes a settlement of claims that were disputed by the Parties. This Agreement contains all the terms of agreement between the Parties concerning the Complaint, and is intended to be the final and sole agreement between the Parties with respect thereto. The Parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

10. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to agree to the terms and conditions of this Agreement and do hereby agree to the terms herein. Further, each party, by and through its undersigned representative, represents and warrants that it has the legal power and authority to enter this Agreement and bind itself to the terms and conditions contained in this Agreement.

11. The Parties shall bear their own costs and attorneys' fees incurred as a result of or in any way related to this Action.

12. No provision of this Agreement may be interpreted as, or constitute, a commitment or requirement that Federal Defendants take action in contravention of the APA, the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other law or regulation.

13. The effective date of this Agreement shall be the date upon which the Agreement has been signed by all Parties.

14. This Agreement upon adoption by the Parties shall serve as a basis for dismissal of this Action. The Parties will stipulate to the dismissal of this Action or move the Court to dismiss this Action with prejudice in accordance with Federal Rule of Civil Procedure 41 within seven days of the effective date of this Agreement. If the Parties move for dismissal and the Court does not dismiss the Action, this Agreement is voidable by any Party.

DATED this 8th day of September, 2022.

/s/ Nicholas Cady
Nicholas S. Cady
Cascadia Wildlands
P.O. Box 10455
Eugene, Oregon 97440
Tel: 541-434-1463
Email: nick@cascwild.org

*Attorney for Plaintiffs*

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Exhibit A at 5

*/s/ Michael K. Robertson*
MICHAEL K. ROBERTSON
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 353-1389
michael.robertson@usdoj.gov

*Attorneys for Defendant*
